injury by reason of the removal of said buildings. Thereafter the petitioner applied to the superintendent of buildings of the borough of Brooklyn for permission to make alterations to said buildings in accordance with plans and specifications approved by the tenement house department; and said superintendent declined to pass upon the application, giving as a reason that the borough president had instructed him not to do so. The borough president says that he instructed the superintendent of buildings not to approve the application for two reasons: First, that no application has been made to him in accordance with section 269 of the city ordinances for permission to move said buildings through or across the highways; and, second, that the sale of the buildings by the comptroller to the petitioner's vendor or assignor was void, for the reason that the property was not sold at public auction as required by section 1553 of the charter (Laws 1901, p. 641, c. 466).

The permission of the borough president to move the buildings across the highway and the permission of the superintendent of buildings to make alterations are independent. Neither is a condition precedent to the granting of the other. If the petitioner obtains the permit asked for in this proceeding, he will still have to have the permit of the borough president before he can move the buildings across the highway; and, if he should obtain such permit, he would still have to have the permit of the superintendent of buildings before he could make the proposed alterations. The granting of the one need not affect or embarrass the consideration of the application for the other.

The sole remaining question is: Can the respondent refuse to consider the application because of the illegality of the sale by the comptroller? The right of the city to attack the sale is not now involved. Certainly the city could not keep both the property and the money received on the sale, and it is unnecessary now to determine whether it could disaffirm the sale without first returning, or offering to return, the money. As superintendent of buildings, the respondent has no concern with the question and should not be permitted to raise it collaterally. If it is desirable to question the legality of the sale, it should be done by a direct attack, wherein the rights of the vendee and of the petitioner, as well as those of the city, can be protected.

The order should be reversed, and a peremptory writ granted, requiring the respondent Moore to pass upon the petitioner's application.

Order reversed, with $10 costs and disbursements, and motion for peremptory writ granted, with $10 costs. All concur.

---

## PIETRAROIA v. NEW JERSEY & H. R. RY. & FERRY CO.

(Supreme Court, Appellate Division, First Department. April 16, 1909.)

1. STREET RAILROADS (§ 114*)—INJURIES TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action against a street railroad for death of plaintiff's intestate through being struck by a car while attempting to cross defendant's tracks, evidence *held* to show contributory negligence on the part of deceased.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 114.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. STATUTES (§ 1*)—EXTRATERRITORIAL FORCE.
     The statutory law of a state has no extraterritorial force.
     [Ed. Note.—For other cases, see Statutes, Dec. Dig. § 1.*]
3. DEATH (§ 35*)—ACTION—JURISDICTION.
     Courts will not take jurisdiction of an action for death, where all the
     parties interested were nonresidents, the accident occurred in another
     state, and, but for the fact that decedent left a small property in the state,
     the courts would have had no jurisdiction.
     [Ed. Note.—For other cases, see Death, Cent. Dig. § 50; Dec. Dig. § 35.*]
     Patterson, P. J., and Houghton, J., dissenting in part.

Appeal from Trial Term, New York County.

Action by Pietro Pietraroia, as administrator, etc., against the New
Jersey & Hudson River Railway & Ferry Company. From a judgment
for plaintiff, and from an order denying a motion for a new trial, de-
fendant appeals. Reversed, and complaint dismissed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE,
HOUGHTON, and SCOTT, JJ.

Clarence E. Thornall, for appellant.
Herbert S. Smyth, for respondent.

HOUGHTON, J. The action is to recover damages for the negli-
gent killing of plaintiff's intestate, while she was attempting to cross
one of defendant's tracks. The defendant is a New Jersey corporation,
operates a ferry across the Hudson river from New York City to Ft.
Lee, and a double-track street railway running from that place to vari-
ous points in northern New Jersey. In the evening of October 19,
1906, the deceased, in company with her husband and another man,
were intending to board a north-bound car on Broad avenue, in what
is known as "Palisades Park." As they came to the far side of the
avenue, a car was observed going in the desired direction, and the
husband and friend went ahead of the deceased to detain the car for
her. Whether from unwillingness to delay or lack of understanding on
the part of the conductor, he refused to hold the car and started it with
the two men aboard. From the testimony on the part of plaintiff it is
apparent that the deceased proceeded diagonally northward in the
vicinity of the south-bound track, in the hope of overtaking the car
which her husband had boarded. A south-bound car coming at a
rapid rate struck and killed her just as she was stepping over the outer
rail of the south-bound track. It is also clear from the plaintiff's own
proof that the point of the accident was about 75 feet north of the in-
tersecting street where the husband had gotten aboard. Although
there is some testimony that, when the witnesses first observed the
deceased, she was 4 or 5 feet west of the south-bound track and in the
vicinity of the northerly crosswalk of Central Boulevard, it is manifest
that the accident did not happen at that point, as the plaintiff now
insists, but at a point considerably further north. The south-bound
car carried a lighted reflector headlight, which was very brilliant.

If it be conceded that the defendant was negligent in the speed at
which the south-bound car was run, and that the motorman was care-
less in observing the movements of the decedent, still we are of the

opinion that the judgment cannot stand because of the clear contributory negligence on the part of the deceased. She was walking toward the coming brilliantly lighted car. Her husband testifies that he heard a whistle; but, whether the whistle sounded or not, she was bound to look, and to observe that a car was approaching upon the track which she was about to cross. The presumption is that she did look, for it was something she could not help but see. Plaintiff's counsel urges that the light was so bright that it blinded her, and that it was impossible because of its brightness for her to estimate its distance from her. These suggestions present no excuse. Had she only been injured, and not killed, and had she testified that she looked, as the law compelled her to do, and did not see the light and the car, her testimony would have been deemed incredible as matter of law, and she must necessarily have been held guilty of contributory negligence in failing to exercise ordinary caution. Dolfini v. Erie Railroad Co., 178 N. Y. 1, 70 N. E. 68.

The plaintiff, a resident of the state of New York, was appointed administrator of the deceased on the ground that she, although a resident of the state of New Jersey, left property within the county of New York, consisting of a deposit in a savings bank to the credit of herself and her husband, "or either." On her death the husband drew out about one half the amount, and on the trial testified that the other half belonged to his deceased wife. We are not prepared to say, upon his testimony and the form of the deposit, that none of the moneys belonged to the deceased, and that, therefore, the Surrogate's Court had no jurisdiction to appoint the plaintiff administrator of her estate.

The accident occurred in the state of New Jersey, and the defendant is a corporation organized under the laws of that state. The decedent and her husband and children were residents there. All the witnesses to the accident on both sides had to be imported to this state. In view of the pressure of business upon the courts of New York City, although the plaintiff may have had a technical right to bring the action here, it would seem that the trial should have been had in the other state.

In any event, the verdict was against the weight of evidence as to lack of contributing negligence on the part of the deceased, and the judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, P. J., concurs.

INGRAHAM, J.  I concur with Mr. Justice HOUGHTON in the view that the deceased was guilty of contributory negligence; but I think this is a case in which the court should decline to take jurisdiction of the cause of action sued on for the reason stated in Ferguson v. Neilson, 58 Hun, 604, 11 N. Y. Supp. 524, Wertheim v. Clergue, 53 App. Div. 124, 65 N. Y. Supp. 750, and Collard v. Beach, 81 App. Div. 582, 81 N. Y. Supp. 619. In each of these cases the court had jurisdiction of the cause of action and of the parties, but declined to exercise it on the ground that the action was to recover for a tort committed in a foreign state, where both parties to the action were residents of

that state. In this case the defendant was a foreign corporation having no business in this state, and over which the courts of this state have no jurisdiction. The deceased was a resident of that state, and her husband and next of kin, for whose benefit the action was brought, are also residents of that state. The plaintiff, who is a resident of this state, has obtained letters of administration upon the ground that the deceased had property in this state—a proposition which is doubtful, but which I assume we cannot consider on this appeal.

In this state by sections 1902, 1903, of the Code of Civil Procedure an executor or administrator may maintain an action to recover damages for a wrongful act by which the decedent's death was caused against a natural person who or a corporation which would have been liable to an action in favor of the decedent by reason thereof if death had not ensued; but the damages recovered in such an action are exclusively for the benefit of the decedent's husband or wife and next of kin, and when they are collected they must be distributed by the plaintiff as if they were unbequeathed assets left in his hands after payment of all debts and expenses of administration, and the complaint alleges that there is a like statute in New Jersey. It is however the statute of the state of New Jersey that gives the cause of action, and the action is thus brought to enforce the law of New Jersey, for the exclusive benefit of citizens of New Jersey, against a New Jersey corporation, for a tort committed in the state of New Jersey. If death had not ensued as the result of this accident, the courts of this state would have had no jurisdiction to determine whether or not the defendant was liable for the accident; and if the cause of action was given to the persons for whose benefit it could be brought the court would have had no jurisdiction. The New Jersey statute gives a cause of action to a New Jersey administrator of the decedent; but this plaintiff is not a New Jersey administrator, he having been appointed by the surrogate of this county only. The laws of this state also give such a cause of action; but it is to recover for an injury causing death in this state, and solely for the benefit of the husband or wife and next of kin of the decedent. The plaintiff, who has no authority from the state of New Jersey to sue, brought this action to enforce the law of New Jersey, and the right of the husband and next of kin to recover the damages which they have sustained by reason of the alleged wrongful act.

No resident of this state had the slightest interest in this controversy, and certainly the objection to the courts of this state concerning themselves with controversies between nonresidents applies with much greater force where the courts of this state would have no jurisdiction but for the fact that by reason of there being a small amount of personal property in this state an administrator is appointed to administer such personal property. If, technically speaking, the Supreme Court of the state of New York had jurisdiction of the action, the plaintiff being a resident, the courts are not bound to exercise the jurisdiction where those solely benefited are nonresidents, and where no reason exists why the liability cannot be enforced in the state where the parties reside and where the accident happened. The statutory law of this

state has no extraterritorial force and the provisions of the Code of Civil Procedure to which I have referred would not give to the plaintiff or to individuals a cause of action for a death caused by negligence in the state of New Jersey, but resort must be had to the laws of that state to determine whether or not a cause of action exists. While the courts of this state have taken jurisdiction to protect its own citizens where injury has been occasioned by the negligence of a nonresident, either individual or corporation, there is no reason for accepting jurisdiction where all those interested are nonresidents, where the accident happened in another state, and where, but for the fact that the decedent left a small proportion of property in this state, the courts of this state would have had no jurisdiction.

I am therefore in favor of reversing this judgment upon the ground that, if the courts of this state have jurisdiction because of the residence of the plaintiff, the administrator of the decedent, they will refuse to exercise that jurisdiction, and the judgment should therefore be reversed, and the complaint dismissed.

CLARKE and SCOTT, JJ., concur.